## CLAUDE NEON LIGHTS, Inc., v. AMERICAN NEON LIGHT CORPORATION et al.

District Court, S. D. New York. August 28, 1929.

Bohleber & Ledbetter, of New York City (Edwin J. Prindle and William Bohleber, both of New York City, and Francis H. Fassett, of Dayton, Ohio, of counsel), for plaintiff.

Charles J. Holland, of New York City, for defendants.

FRANK J. COLEMAN, District Judge. Plaintiff obtained from this court a preliminary injunction [35 F.(2d) 263] restraining defendants from infringing plaintiff's patent on neon lamp tubes, but nevertheless there are still in use numerous infringing lamps owned by the defendants. These, however, had prior to the service of the injunction been leased by the defendants to outside parties, who are now operating them, or had been sold on contracts of conditional sale. The principal question presented is whether the

injunction prohibited defendants from carrying out the contracts of lease or of conditional sale, which had been entered into before the injunction, and which pertained to lamps previously installed on the premises of others.

The injunction restrained defendants "from directly or indirectly leasing, supplying, selling, servicing, installing, or from directly or indirectly causing to be used, leased, supplied, sold, serviced, installed, and from directly or indirectly encouraging or aiding and abetting the use, sale, installation or disposing in any manner of neon luminous tubes or any other apparatus or product containing, embodying or employing the invention described in or covered and defined by claim 1 of United States letters patent No. 1,125,476, or from infringing upon or violating the invention of said letters patent in any way whatsoever."

Prior to the granting of it, defendants had installed on the premises of other persons numerous luminous signs composed of infringing tubes, and the contracts of lease and of conditional sale provided that defendants would not only retain title, but would service the sign throughout the period of the contracts. The words of the lease are:

"(g) Lessor agrees to maintain and keep in good repair the said sign. In the event of the failure of the sign to operate through any fault on the part of the lessor, the lessor shall cause the same to be repaired and put in satisfactory working order. Upon such failure to operate, the lessee shall notify the lessor, in writing, of such fact, and the lessor shall, if practicable, cause the sign to put in proper repair within forty-eight hours of the receipt of such notice, and if the same shall be so repaired in such period of time, the lessee shall be entitled to no diminution of rent or other claim for damages on account thereof. In event the sign shall not be operable, because of the fault of the lessor, for a greater period than forty-eight hours after the lessor has received notice of the sign's disrepair, the lessee shall receive credit of 1/720 of the monthly rental for every hour over and above such period until the sign shall again be in proper working condition, but shall be entitled to no other claim for damages. No claims will be allowed unless notice of sign's disrepair be received by registered mail."

"(i) In the event of the failure of lessee to pay the rentals provided for herein at the time and in the manner provided or in the event the lessee shall breach any other term or condition hereof, the lessor shall have the right, at its option, to repossess the sign and to terminate this lease and to recover from the lessee any damages that it may have suffered by reason of lessee's said default or breach."

"(o) The sign shall at all times be deemed personal property, and shall not by reason of attachment or connection to any realty, become or be deemed a fixture or appurtenant to such realty and shall at all times be severable therefrom, and shall be and remain at all times the property of the lessor, free of any claim or right of the lessee, except as set forth herein."

The leases were practically contracts of conditional sale, because they provided that at the end of the term the lessee might at his option receive a bill of sale of the sign upon payment of a consideration of $1.00.

It is undisputed that after the granting of the injunction, defendants not only continued to receive the installments of the purchase price or of the rent, but also serviced the sign. There is no evidence that any new tubes of the infringing variety were supplied to the sign after the injunction, but parts were supplied and services rendered by defendants which made possible the continued use of the infringing tubes already installed.

It seems plain to me that this court did not intend to permit defendants to continue performing their contracts and getting the profit therefrom since that involved further infringement of plaintiff's patent. These were not executed contracts, upon which defendants were merely receiving payment; the sales were in process of being perfected by the very receipts of payments. In other words, the infringements by defendants were being completed by the continued performance of the contracts. This was in violation of the injunction and I must, therefore, hold that the defendants responsible for it are in contempt of court.

Some of the advertising of defendants is misleading. While it is possible that a lawyer, by supplying certain additional terms, might justify it, a lay reader would be apt to get an erroneous impression from parts of it.

In settling the order, counsel are requested to appear personally, so that there may be a discussion of the various terms of it.